UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHERYL M. OLDHAM, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:06-cv-1123-SEB-JMS |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant.[1] ) | |

**Entry Discussing Complaint for Judicial Review**

Cheryl M. Oldham ("Oldham") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Oldham filed applications for DIB and for SSI on December 8, 2003, alleging an onset date of disability of August 25, 2003. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on February 3, 2006. Oldham was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Oldham testified at the hearing. The ALJ issued a decision on February 13, 2006, denying benefits.  On June 15, 2006, the Appeals Council denied Oldham's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Oldham met the disability insured status requirements of the Act through June 30, 2005; (2) Oldham had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) the medical evidence established that Oldham had a "severe" impairment consisting of fibromyalgia, that lupus, hypertension, and depression were nonsevere impairments, and that she did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Oldham retained the residual functional capacity ("RFC") to perform light exertional work; (5) Oldham's subjective complaints and allegations concerning the severity of her impairments were not reasonably consistent with the objective medical and other evidence of record; (6) Oldham was unable to perform her past relevant work as a janitor/cleaner; (7) Oldham was a younger individual, she had a limited education, and had no transferable skills; and (8) based on an exertional capacity for light[2] work, and Oldham's age, education, and work experience, Medical-Vocational Rules 202.17 and 201.24 direct a conclusion of "not disabled." With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Oldham had not been "disabled" within the meaning of the Act at any time relevant to the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show

---

[2]Although the ALJ's finding number 10 states "sedentary" work, the body of the ALJ's decision makes it clear that he intended to use the word "light" in this finding. (R. at 18).

>    that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that Oldham had a "severe" impairment consisting of fibromyalgia, but that she could perform the full range of light work and, therefore, was not disabled.  (R. at 14-20).[3]  Oldham argues that substantial evidence does not support the ALJ's decision, that the ALJ erroneously failed to find that Oldham met a listing, that the ALJ erred in rejecting the opinion of a treating physician, that the ALJ failed to properly evaluate her lupus, that the ALJ's evaluation of Oldham's credibility was patently wrong, and that the ALJ improperly relied on the "grid."

### 1.     Listings

Oldham first argues that the ALJ's determination that her impairments did not meet or equal any listed impairment is not supported by substantial evidence. She asserts that the ALJ erred in not finding that her impairments satisfied Listing 14.02A or B (systemic lupus erythematosus).

The ALJ noted that there was no specific listing for the evaluation of fibromyalgia, but he specifically discussed Listing 14.06 (undifferentiated connective tissue disorder) and

---

[3]Light work" is characterized as lifting a maximum of twenty pounds occasionally, frequent lifting or carrying of up to ten pounds, and standing or walking off and on, for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects.  *Clifford v. Apfel*, 227 F.3d 863, 869 n.2 (7th Cir. 2000) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10).

3

Listing 14.04 (systemic sclerosis and scleroderma). (R. at 15).[4] The ALJ noted that there were "some reports of lupus in the record, but this has never been confirmed." *Id.* He concluded that lupus was a nonsevere impairment. *Id.* Accordingly, he did not consider Listings 14.02A or B. In the course of discussing Listing 14.06, however, the ALJ concluded that the elements required by parts A and B of the listing (the same as those required for the lupus listing) were not shown in the record. *Id.*[5]

It is Oldham's burden to show that her impairments meet a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). She must show that her impairments satisfy all of the criteria set forth in the listing. *Id.* The ALJ adequately discussed Listings 14.04 and 14.06 to permit judicial review. As noted by the ALJ, there is no medical opinion of record indicating that Oldham's impairments met or equaled these, or any other, listings. In addition, Oldham has not shown that her impairments satisfied each of the criteria of Listing 14.02A or B. Moreover, the opinions of the state agency physicians constitute substantial evidence in determining that Oldham's impairments did not satisfy a listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In sum, the ALJ discussed the applicable evidence and his conclusion that Oldham's impairments did not meet or equal a listing is supported by substantial evidence.

### 2. Treating physician opinion

Oldham argues that the ALJ improperly rejected the opinion of treating rheumatologist Dr. Neucks that Oldham was "totally disabled" (R. at 71, 142).[6] The ALJ

---

[4]The ALJ also determined that Oldham did not satisfy Listings 12.04B and 12.04C (affective disorders), but Oldham asserts no error as to this conclusion. (R. at 16).

[5]Parts A and B are the following: A. One of the following:  1. Joint involvement, as described under the criteria in 1.00; or 2. Muscle involvement, as described under the criteria in 14.05; or 3. Ocular involvement, as described under the criteria in 2.00ff; or 4. Respiratory involvement, as described under the criteria in 3.00ff; or 5. Cardiovascular involvement, as described under the criteria in 4.00ff or 14.04D; or 6. Digestive involvement, as described under the criteria in 5.00ff; or 7. Renal involvement, as described under the criteria in 6.00ff; or 8. Hematologic involvement, as described under the criteria in 7.00ff; or 9. Skin involvement, as described under the criteria in 8.00ff; or 10. Neurological involvement, as described under the criteria in 11.00ff; or 11. Mental involvement, as described under the criteria in 12.00ff.
Or
B. Lesser involvement of two or more organs/body systems listed in paragraph A, with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity.
20 C.F.R. Pt. 404, Subpt. P of Part 404, Listing 14.02.

[6]Oldham asserts that Dr. Neucks opined that she was totally disabled *due to lupus.* Dr. Neucks' four word sentence, however, does not state that Oldham was disabled as a result of lupus.  (R. at 71, 142) ("Pt is totally disabled.").

4

discussed, but rejected, this opinion because (a) it was without support, (b) the physician gave no rationale for his conclusion, and (c) the ALJ found it to be contrary to the substantial evidence of record. (R. at 16). The ALJ further noted that the ultimate determination as to the claimant's RFC and disability is reserved to the Commissioner. (R. at 16, citing 20 C.F.R. §§ 404.1527(e) and 416.927(e) and Social Security Ruling 96-2p).

A treating physician's statement that a claimant is disabled or cannot work is not conclusive. *See Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"). Dr. Neucks' four word opinion is, indeed, conclusory. The ALJ discussed the record in relation to Dr. Neucks' opinion and provided a reasonable explanation for his conclusion in this regard. Under these circumstances, the ALJ's evaluation of Dr. Neucks' opinion is supported by substantial evidence.

### 3. Lupus, Credibility and the Grid

Oldham argues that the ALJ failed to properly credit her testimony that she was totally disabled due to lupus. The record contains mixed opinions as to such a diagnosis. The ALJ's notation that there had been some reports of lupus which had not been confirmed is an accurate statement of the record. (R. at 15). In October 2003, Dr. Batt noted that "a positive ANA alone is not sufficient to make a diagnosis of lupus." (R. at 206). A January 16, 2004, report from Dr. Zdoblyak indicated that Oldham's longstanding history of symptoms "may be describing lupus." (R. at 235). On March 13, 2004, consulting examiner Dr. Issa opined that Oldham had right sided numbness and connective tissue disease and probable lupus causing generalized body aches. (R. at 245). On April 5, 2004, Dr. Neucks noted that Oldham had "positive ANA of unknown significance." (R. at 140). On two dates in July 2004, treating physician Dr. Berry listed "SLE" (systemic lupus erythematosus) and "lupus" as diagnoses. (R. at 172, 175). Of greater significance than a diagnosis, however, are the functional limitations that any particular disease or symptoms may cause. What is consistent throughout the record are Oldham's complaints of significant pain, weakness, numbness, and fatigue.

Oldham also challenges the ALJ's credibility findings with regard to her nonexertional impairments. The ALJ determined that Oldham's subjective complaints and allegations concerning the severity of her impairments and resulting limitations were not entirely consistent with the record. (R. at 17). Although the ALJ concluded that he could not credit Oldham's allegations that she was unable to perform any basic work activities, he did not provide a reasonable explanation for essentially discrediting all of her allegations. For example, the ALJ stated that Oldham's "right-sided symptoms have been thoroughly evaluated with no cause found." (R. at 18).[7] The fact that physicians had not been able

---

[7]The ALJ discounted Oldham's complaints of diarrhea because there was little mention of it in the record. (R. at 18). He found that there was no evidence to corroborate her alleged need to use the bathroom every 10 to 15 minutes. *Id.* While this may be the case, the timing of the allegations of severe symptoms and the medical reports of record may not match. Aside from that,

5

to determine a "cause" does not mean that Oldham had not experienced right sided numbness. No physician has opined that those symptoms were not genuine. In addition, the ALJ reasoned that although Oldham's "daily routine may have been slower than at an earlier time, and done with some help, it was altogether no small task" to care for three young children. (R. at 16).The ALJ acknowledged that Oldham became tired within 2 ½ hours of when she woke up, she did housework but had to rest for 20 minutes in between tasks, she did not dust and had no yard work, and her older daughters helped the younger siblings get dressed. *Id.* It is proper to consider a claimant's activities as one factor when determining credibility, however, reliance on a claimant's minimal daily activities does not form an adequate basis to discredit her allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week").

The ALJ accepted the diagnosis of fibromyalgia, but provided little discussion of Oldham's limitations therefrom. (R. at 18) ("While I acknowledge that the claimant may have some pain and limitations, there is nothing in the evidence to suggest a residual functional capacity below that I have assessed."). In a fibromyalgia case such as this, the Seventh Circuit has emphasized that the symptoms of fibromyalgia are "entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). "The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Id.* at 306.

Virtually every medical report in this case discusses Oldham's complaints of pain, numbness, weakness and/or fatigue and the physicians' attempts to diagnose and treat them. The ALJ cites no evidence showing that Oldham's complaints were that of a malingerer. Here the ALJ failed to explain why Oldham's nonexertional limitations of pain, weakness, numbness and fatigue were not severe enough to restrict a full range of employment. Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," in this case the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusions. *See Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir.2001). Therefore, the court cannot affirm the ALJ's credibility analysis.

In a related argument, Oldham contends that the ALJ should have consulted with a vocational expert rather than rely on the grid in determining that she was not disabled. She argues that her nonexertional limitations were not properly evaluated by the ALJ and that his reliance on the grid was reversible error. "Use of the grid may indeed be

---

however, the ALJ does not explain how the lack of support for complaints of severe diarrhea lessens her credibility as to Oldham's many other nonexertional symptoms which are consistently discussed in the medical reports.

6

inappropriate if a claimant's non-exertional impairments are so severe as to limit the range of work he or she can perform." *Allen v. Sullivan,* 977 F.2d 385, 389 (7th Cir. 1992). "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). *See also Herron v. Shalala*, 19 F.3d 329, 336-37 (7th Cir. 1994) (the use of the grid is inappropriate where the claimant's nonexertional impairments are so severe as to limit the range of work she can perform, in which case a determination of disability is made through the testimony of vocational experts who can indicate what work a claimant is capable of performing.). The ALJ did not seek the advice of a medical expert and a vocational expert in determining to what degree Oldham's pain, numbness and fatigue would restrict her ability to perform functions at work.

The ALJ concluded, based on the record, that Oldham had the exertional capacity to perform substantially all of the requirements of light work, and that based on her age, education, and work experience, she was "not disabled" pursuant to Medical-Vocational Rules 202.17 and 201.24. (R. at 18). In light of the nonexertional nature of Oldham's limitations, the ALJ's reliance on the grid at step 5 of the analysis in this case and his finding that Oldham could perform the full range of light unskilled jobs is not supported by substantial evidence.

### III. CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 09/10/2007

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana